IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 19, 2005

**STATE OF TENNESSEE v. COURTNEY MEANS**

**Direct Appeal from the Criminal Court for Shelby County**
**Nos. 03-05190, 92, 94    Bernie Weinman, Judge**

---

**No. W2004-01446-CCA-R3-CD  - Filed June 3, 2005**

---

The defendant, Courtney Means, was convicted by a Shelby County Criminal Court jury of eight counts of aggravated robbery, a Class B felony, based on three separate incidents involving four victims.  After merging the separate counts involving the same victim, the trial court  sentenced the defendant as a Range I, standard offender to nine years for each of the remaining four convictions, with two of the sentences to be served consecutively, for an effective sentence of eighteen years in the Department of Correction.  In this timely appeal as of right, the defendant challenges both the trial court's application of enhancement factors to increase his sentences beyond the eight-year minimum for his range and its imposition of consecutive sentencing.  Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Robert Wilson Jones, Shelby County Public Defender; W. Mark Ward, Assistant Public Defender (on appeal); and Trent Hall, Assistant Public Defender (at trial), for the appellant, Courtney Means.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; and Paul Hagerman and Alexa Fulgham, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

All four robbery victims were robbed at gunpoint in the driveways or carports of their Memphis homes during the Christmas holiday shopping season of December 2002.  At the defendant's May 3, 2004, trial, the first robbery victim, sixty-three-year-old Carolyn Fredrickson, testified she was loading three dogs into her car at about 3:00 p.m. on December 18, 2002, when she

noticed a burgundy, square-looking vehicle with a drive-out tag in the rear window pull up on the street outside her home and a young man run across her yard. Assuming he was coming to sell her something, she continued placing the dogs into her car. When she raised up, the young man was holding a silver handgun against her neck and demanding her purse. After she handed it to him, he ran back to the waiting vehicle and got in the passenger side and the driver sped away. Approximately one month later, Fredrickson identified the defendant as the armed robber by picking his photograph out of a photographic array at the police department. She also made a positive courtroom identification of the defendant as her assailant and identified a photograph of the defendant's vehicle as similar in appearance to the getaway vehicle used in the robbery.

The second and third victims, husband and wife Robert and Sara Alice Hill, were robbed in their open garage at approximately 2:30 p.m. on December 22, 2002. At trial, eighty-two-year-old Robert Hill testified he and his wife were unloading Christmas packages from the trunk of their vehicle when a man came up behind him, placed a shiny automatic pistol against his face, and demanded his wallet, his wife's purse, and their car keys. Hill said the gunman threatened to shoot them if they did not comply with his demands. He testified that after they had handed the items over, the man threw the car keys down at the gate and ran to a waiting car, which was driven by another man. Hill described the getaway vehicle as a maroon or dark red Mercury or Chevrolet with a drive-out tag in the rear window, and he agreed it was very similar in appearance to the photograph of the defendant's vehicle.

Later that same afternoon, Robert Hollie was robbed in the carport of his home by a young man with a silver pistol who fled in a similar-looking vehicle. Hollie, who was sixty-four years old at the time of trial, testified he was unlocking the door to his house at approximately 4:30 p.m. when a young man ran up, pointed a silver gun at his head, and shouted, "Get in the house or I'll shoot." Knowing that his wife was inside the house, Hollie began grappling with the gunman for the weapon. As he struggled, he ended up on his knees but still managed to retain his grip on the weapon and the gunman. At that point, however, a second man ran up and kicked him in the face and shoulder, breaking his nose. Hollie testified that when the second man began to kick him a third time, he grabbed the second man's leg and the gunman was able to break away. He said the gunman took his wallet, and both men fled to a burgundy vehicle with a drive-out tag in the rear window and a luggage rack on the trunk. Hollie was unable to identify the robbers but, like Hill, agreed that the getaway vehicle was similar in appearance to the photograph of the defendant's vehicle.

On January 15, 2003, police officers were dispatched to a Memphis check cashing business in response to a report that someone was attempting to cash a stolen check. When they arrived, they found the defendant in the driver's seat of his maroon Oldsmobile Cutlass, which had a drive-out tag in the rear window and a luggage rack on the trunk. In the subsequent search of the defendant's vehicle, the officers discovered a chrome nine-millimeter, semi-automatic weapon hidden beneath the carpet behind the vehicle's brake pedal. The defendant initially denied any involvement in the crimes but eventually issued three statements in which he detailed his participation in the robberies.

The trial court applied four enhancement and no mitigating factors to sentence the defendant to nine years for each of his four aggravated robbery convictions. Finding that the defendant qualified as a dangerous offender, the trial court ordered that he serve two of the nine-year sentences consecutively, for an effective eighteen-year sentence in the Department of Correction. Thereafter, the defendant filed a timely appeal to this court, challenging the trial court's sentencing determinations.

## ANALYSIS

### Sentencing

The defendant contends that the trial court erred in sentencing by applying enhancement factors to increase his sentences beyond the minimum in his range and by ordering that two of his sentences be served consecutively. When an accused challenges either the length or manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2003). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statements made by the accused in his own behalf, and (h) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2003); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). As the party challenging the sentences, the burden falls on the defendant to show that the trial court erred in its sentencing determinations.

### A. Application of Enhancement Factors

As a Range I offender convicted of a Class B felony, the defendant was subject to a sentence ranging from eight to twelve years. See Tenn. Code Ann. § 40-35-112(a)(2) (2003). Our sentencing statute provides that for a Class B felony, a trial court starts at the minimum sentence in the range, increases the sentence within the range based upon the existence of any applicable enhancement factors, and then reduces the sentence as appropriate based on applicable mitigating factors. Tenn. Code Ann. § 40-35-210(c), (d), (e) (2003). The weight to be afforded an existing factor is left to the trial court's discretion so long as it complies with the purposes and principles of the 1989 Sentencing Act and its findings are adequately supported by the record. Tenn. Code Ann. § 40-35-210, Sentencing Commission Cmts.; State v. Moss, 727 S.W.2d 229, 237 (Tenn. 1986).

The trial court applied the following four enhancement factors to the crimes:

-3-

(2) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(3) The defendant was a leader in the commission of an offense involving two (2) or more criminal actors;

. . . .

(5) A victim of the offense was particularly vulnerable because of age or physical or mental disability . . .

. . . .

(21) The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult[.]

Tenn. Code Ann. § 40-35-114(2), (3), (5), (21) (2003). Finding no relevant mitigating factors, the trial court sentenced the defendant to nine years for each offense, one year beyond the statutory minimum for his range.

On appeal, the defendant challenges neither the facts upon which the trial court relied for its application of the above enhancement factors, nor the trial court's failure to apply any factors in mitigation. Instead, he contends that our state's sentencing procedure, by which the trial court rather than the jury is allowed to find the existence of enhancement factors used to increase a defendant's sentence, violates his Sixth Amendment right to trial by jury, as set forth in Blakely v. Washington, 542 U.S. __, 124 S. Ct. 2531 (2004). However, in State v. Gomez, __ S.W.3d __, __, No. M2002-01209-SC-R11-CD, 2005 WL 856848, at **20-22 (Tenn. 2005), which was released after the briefs were filed in this case, our supreme court concluded that Tennessee's sentencing scheme does not violate a defendant's Sixth Amendment right to trial by jury because of the discretion it affords the trial court "to select an appropriate sentence anywhere within the range." Therefore, under Gomez, there was no error in the trial court's having found the existence of the enhancement factors used to increase the defendant's sentence beyond the presumptive minimum in his range. This issue is without merit.

## B. Imposition of Consecutive Sentencing

The defendant also contends that the trial court erred by imposing consecutive sentencing. He argues that there were no "aggravating circumstances" to place him within the dangerous offender classification and that the trial court failed to make the additional findings necessary to support consecutive sentencing under the dangerous offender criterion of the statute.

Under Tennessee Code Annotated section 40-35-115, a trial court may in its discretion impose consecutive sentencing when it finds any one of a number of criteria to exist by a

preponderance of the evidence, including that "[t]he defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." Tenn. Code Ann. § 40-35-115(b)(4) (2003). When a trial court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it is required to make further findings that the aggregate length of the defendant's sentence reasonably relates to the severity of his offenses and is necessary to protect the public from further criminal conduct of the defendant. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995).

The trial court made the following findings when determining that consecutive sentences were warranted in this case:

> And the Court finds that the defendant, of course, has committed these numerous robberies and not only that, indicating because of the age of the victim and that he took advantage of them, and of course, that was part of the enhancement factors, but that he went out and committed a series of robberies on separate dates. It was just a dangerous, dangerous type of situation.
>
> Of course, obviously, the offenses themselves were offenses of violence with the use of guns and that I think that there would be a necessity to protect society from the defendant at this point.
>
> The Court finds, based on all of the criteria that the Court feels -- the two that would be appropriate situation here is that the cases in indictment number 03-05194 and 03-05190, run those concurrent. And the cases in 03-05192 will run concurrent with each other, but consecutive to the other two indictments for an effective sentence of eighteen years and a fine of four-thousand dollars.

Although the trial court could have been more explicit in its wording, the record reveals it made sufficient findings that the defendant's eighteen-year sentence was reasonably related to the severity of his offenses and was necessary to protect society from his further criminal behavior. Furthermore, the record supports the trial court's classification of the defendant as a dangerous offender based on the facts and circumstances surrounding the offenses. The proof established that the defendant targeted vulnerable, elderly victims in the driveways or carports of their own homes during daylight hours, brandished a semi-automatic weapon, and threatened to shoot the victims if they did not comply with his demands. The proof further established that the last victim's attempt to protect his wife by preventing the robber's entry into his home resulted in his struggling with the robber for possession of the gun and his sustaining a broken nose from a kick in the face by the robber's accomplice. We conclude, therefore, that the trial court did not err in ordering consecutive sentencing.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the sentences imposed by the trial court.

_____
ALAN E. GLENN, JUDGE